

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1364 | **DATE** | 9/27/2001 |
| **CASE TITLE** | JOHN MUSACHIA vs. MEDTRONICS USA, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant Medtronics USA, Inc.'s motion to dismiss Plaintiff's first amended complaint [13-1] is granted. Plaintiff's case is dismissed with leave to reinstate within 90 days.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 28 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 20 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 27 PM 3:12 | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

SEP 28 2001

| | |
|---|---|
| JOHN MUSACHIA ) | SEP 28 2001 |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 00 C 1364 |
| ) | |
| MEDTRONICS U.S.A., INC., a corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This is an action seeking redress for violation of rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq. Plaintiff seeks mandatory injunctive relief and damages to redress discriminatory, and unlawful employment practices it claims Defendant engaged in. Plaintiff additionally seeks damages for Defendant's violation of the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat., 115/1, et seq. Pending is Defendant MEDTRONICS motion to dismiss pursuant to Federal Rules of Civil Procedure 12 (b)(6). For the reasons stated below, Defendant's motion to dismiss is granted.

1

## BACKGROUND FACTS

The summary of the facts is taken from plaintiff's first amended complaint. The plaintiff, John Musachia ("Plaintiff"), was employed with Medtronics U.S.A., Inc ("Defendant") predecessor, Arterial Vascular Engineering ("AVE"), beginning in March of 1998, and became an employee of Defendant as a result of a merger in January of 1999. On July 27, 1999, Plaintiff was notified of his involuntary termination by Glen Bruemmer, Plaintiff's supervisor and an employee of Defendant, and Plaintiff was given until October 31, 1999, to remain on Defendant's payroll, which option Plaintiff declined. During his employment with Defendant, Plaintiff participated in various employee benefit plans of Defendant's, including Employee Stock Ownership Plan ("ESOP"), Employee Stock Purchase Plan ("ESPP"), Stock Option Replacement Program ("SORP"), and Supplemental Retirement Plan ("SRP"). Defendant continued to carry Plaintiff on the AVE payroll system until the end of June, 1999, which was after the merger that occurred in January 1999. Plaintiff elected to participate in the ESPP plan at 10% of his after tax pay, which amounted in a withholding of $5,180.43 from the Plaintiff in the ESPP plan in 1999. Plaintiff also elected to participate in the SORP program to a maximum of $15,000.00. In 1999, $7,500.00 was withheld from Plaintiff through his participation in the SORP program. Plaintiff also elected to participate in the ESOP program, where Medtronic was to match between 2.5% and 4% of Plaintiff's total yearly compensation. Plaintiff's total yearly compensation from Defendant in 1999 was approximately $75,000.00. Plaintiff also earned approximately 128 hours of vacation and unused sick pay benefits. On November 1, 1999, Plaintiff was also issued 208 shares of Medtronic stock in an account labeled MEDTRONIC, INC. ACCOUNT ("ACCOUNT") administered through Wells Fargo and designated as ESPP.

Later though, those stocks were reversed out of the ACCOUNT. Plaintiff contends that it requested, on numerous occasions, an accounting from Defendant of his withheld funds and contributions made on his behalf to the various plans in which he was a participant, but Defendant did not provide Plaintiff with the requested information.

Plaintiff asserts that he was continued to be carried as a Medtronic employee on its payroll system through January of 2000, even though Plaintiff was involuntarily terminated in July of 1999. Defendant failed to designate Plaintiff as terminated with the entities administering the various above-mentioned plans, and as a result, Plaintiff was unable to make any determination as to the funds and stock shares held in his name. Plaintiff also asserts that Defendant also refused to purchase stock or options on behalf of Plaintiff through his participation in the SORP plan, and Defendant withheld his funds and refused to refund those funds to Plaintiff until the end of January, 2000. Plaintiff did receive a final paycheck dated on or about January 28, 2000, which included a refund of his $7,500.00 withholding from the SORP fund, a payment for two weeks of earned vacation, and a refund of $4,693.14 from his withholdings in the ESPP plan, which as stated above, was below the amount that was withheld, i.e., $5,180.43. Plaintiff contends that he was further entitled to a Medtronic employer match of between 50% to 150% of his contributions in the SRP, which totaled approximately $6,800.00. Defendant's match contribution was actually in the amount of approximately $1,900.00. Defendant has now filed a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6).

3

## DISCUSSION

### I. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a) establishes a system of notice pleading. *Cannella v. Cordell Enterprises*, 980 F.Supp. 272, 273 (N.D. Ill. 1997) citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). Where notice pleading is sufficient, a complaint cannot be dismissed under Fed. R. Civ. P. Rule 12(b)(6) unless "no relief may be granted under any set of facts that could be established consistent with the allegations." *Id.*, citing *Bartholet v. Reishauer*, 953 F.2d 1073, 1077-78 (7th Cir. 1992). "A district court may grant a 12(b)(6) motion only if it is beyond doubt that the non-movant can plead no facts that would support the claim for relief." *Palda v. General Dynamics Corp.*, 47 F.3d 872, 874 (7th Cir. 1995), citing *Conley v. Gibson* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). Furthermore a complaint is read liberally and the court is to "accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir. 1996), citing *Palda*, 47 F.3d 872, 874 (7th Cir. 1995), citing *Conley* 355 U.S. 41, 47-48, 78 S.Ct. 99, 102-103 (1957).

### II. Action for Equitable Relief Under 29 U.S.C. §1132(a)(3)

All suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans are to be treated as federal questions. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). When individual relief is sought, as opposed to relief of the plan, a breach of fiduciary duty action can be maintained under 29 U.S.C. §1132(a)(3), as long as recovery is limited to appropriate equitable relief. *Anderson v. Illinois*

4

*Bell Telephone Company*, 961 F.Supp. 1208, 1213 (N.D. Ill. 1997); citing *Anweiler v. American Electric Power Service Corporation*, 3 F.3d 986, 993 (7th Cir. 1993). Furthermore, a plaintiff should name the plan as the proper defendant against whom to make an ERISA claim. *Mein v. Carus Corporation*, 241 F.3d 581, 584 (7th Cir. 2001). This is because any money judgement is enforceable only against the plan, and not against an individual unless his or her liability is established in his or her capacity. *Id.* With regards to the types of plans that fall within the reach of ERISA, there are two specific plans. An "employee benefit plan" as stated in ERISA, means either an "employee pension benefit plan", or an "employee welfare benefit plan." 29 U.S.C. 1002(3). It has been established that stock option plans do not normally fall within either of these two categories. *Goodrich v. CML Fiberoptics, Inc.*, 990 F.Supp 48, 50 (D. Mass. 1998).

Plaintiff in the case at hand states that it seeks equitable relief under §1132(a)(3). Section 1132(a)(3) allows for a plan beneficiary, participant or fiduciary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain the appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. 1132(a)(3). This section only authorizes appropriate equitable relief for the purpose of redressing violations, or enforcing provisions of ERISA or and ERISA plan. *Mertens v. Hewitt Associates*, 508 U.S. 248, 253, 113 S.Ct. 2063, 2067 (1993). Furthermore, the appropriate equitable relief under §1132(a)(3) includes only typical remedies available in equity, such as injunction, mandamus, and restitution, and does not include legal remedies such as compensatory damages or monetary relief. *Anweiler*, 3 F.3d 986, 993 (7th Cir. 1993); citing *Mertens*, 508 U.S. 248, 255, 113 S.Ct. 2063, 2068 (1993). Therefore, in order to maintain a cause of action under §1132(a)(3), a plaintiff

must show that he or she is seeking an appropriate equitable relief, and not monetary or compensatory damages in addition to the other requirements. *Id.*

Plaintiff in this case has named the plan fiduciary as the defendant, and has stated that he seeks mandatory injunctive relief, but has also asked for damages to redress discriminatory, and unlawful employment practices it claims Defendant engaged in. Additionally, Plaintiff's action lists four plans that are at issue, of which two appear to be mere "stock option plans" not governed by ERISA, the "ESPP" and "SORP". As far as the two remaining plans governed by ERISA are concerned, the "ESOP" and the "SRP", Plaintiff has properly named the plans as the defendant and has stated that he seeks appropriate equitable relief in the form of a mandatory injunction.

### III. ERISA Administrative Exhaustion Requirement

"Application of the exhaustion doctrine in an ERISA case requiring a claimant to exhaust administrative remedies prior to bringing a suit is a matter left to the discretion of the trial court." *Kross v. Western Electric Company, Inc.*, 701 F.2d 1238, 1244 (7th Cir. 1983). In *Kross*, the Seventh Circuit stated that, "there is strong federal policy expressed in case law, encouraging private resolution of ERISA related disputes, which mandates the application of the exhaustion doctrine in this case." *Id.* at 1244. In *Kross*, just as the case at hand, the plaintiff failed to take the first steps of exhausting his remedies before the Benefit Committee, and the court therefore found that the exhaustion doctrine was applicable. *Id.* at 1246. Courts require the exhaustion of administrative remedies in order to minimize frivolous lawsuits, promote a non-adversarial dispute resolution process, and decrease the costs associated with disputed claims. *Koenig v.*

6

*Waste Management, Inc.*, 76 F. Supp.2d 908, 912 (N.D. Ill. 1999); citing *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). There are two exceptions to the exhaustion doctrine though.

"A district court may excuse a plaintiff's failure to exhaust administrative remedies (1) if there has been a lack of meaningful access to the review procedures, or (2) if exhaustion of internal remedies would be futile." *Robyns v. Reliance Standard Life Insurance Company*, 130 F.3d 1231, 1236 (7th Cir. 1997); citing *Smith v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 658-59 (7th Cir. 1992). To qualify for the futility exception, a claimant must show that it is certain their claim will be denied on appeal, and not merely that they doubt an appeal will result in a different decision. *Smith*, 959 F.2d 655, 659 (7th Cir. 1992). To qualify under the second exception to the exhaustion doctrine, a claimant is required to show that there is a lack of meaningful access to review procedures, which includes attempts to initiate higher levels of review procedures met with denial, or if a claimant is not told review procedures were available. *Id.*

Plaintiff in this case argues that it qualifies under the first exception to the exhaustion doctrine, the futility exception. In particular, Plaintiff alleges that he requested, on numerous occasions, an accounting from Defendant of his withheld funds, but was denied the requested information. Plaintiff argues that this denial of accounting statements constitutes certainty in that their claim would be denied on appeal, and therefore this action falls within the futility exception to the exhaustion requirements. This court does not agree. In *Smith*, the plaintiff tried to invoke the futility exception in an ERISA case, just as Plaintiff in this case, based upon the fact that it had made repeated requests for review of his benefits, but was given no response. *Smith*, 959

7

F.2d 655, 659 (7th Cir. 1992). The court in *Smith* found that this was not proof with certainty that the review procedure would not work. In *Robyns*, a similar ERISA related case, the plaintiff misinterpreted a letter explaining the reasons for suspension of her payments as a denial of her benefits, just as the plaintiff in this case misinterprets the "non-response" from Defendant concerning accounting statements as a denial of his benefits. Just as in *Robyns*, this court is not persuaded that this response, or "non-response" given to Plaintiff is equivalent to certainty of a denial of his benefits by the internal appeal procedure. Because Plaintiff has failed to present facts to show that the review procedure would not work, with certainty, the futility exception does not apply here. Furthermore, there is no evidence to suggest that Plaintiff was unaware of review procedures, or that he has no meaningful access to such procedures. Therefore, because Plaintiff has failed to even attempt in taking the first steps in exhausting his administrative remedies, the Defendant's motion to dismiss is granted.

## IV. Pleading a Cause of Action Under the Illinois Wage and Collection Act

With regards to Plaintiff's claim against Defendant for violation of the Illinois Wage and Collection Act as a pendant state claim under 28 U.S.C. 1367(a), the issue is moot as the original ERISA claim has been dismissed for the above stated reasons. As such, there is no supplemental jurisdiction under 1367(a) as there is no federal question at issue.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's first amended complaint (#13-1). Plaintiff's case is dismissed with leave to reinstate within 90 days.

8

Plaintiff is to access the procedures which Defendant has in place for the reimbursement he seeks. All requests should be made by Plaintiff in writing and Defendant is to respond to Plaintiff's written requests within ten (10) business days in writing. If these efforts fail Plaintiff may refile a complaint in accordance with the rulings made in this motion to dismiss.

SO ORDERED: 9/27/01          ENTERED:

*[signature]*

Ronald A. Guzman
United States Judge